## A02A0892. HARRIS v. THE STATE.
(570 SE2d 353)

RUFFIN, Judge.

A Richmond County jury found Reginald Harris guilty of armed robbery, kidnapping, aggravated assault, and possession of a firearm during the commission of a crime. On appeal, Harris challenges the sufficiency of the evidence. He also asserts that the trial court erred in: failing to sever his trial from that of his co-defendant, Revandez Morgan; admitting certain testimony; permitting the prosecutor to ask a burden-shifting question; and instructing the jury. As Harris's claims of error lack merit and the evidence is sufficient, we affirm.

The facts of this case were detailed in this Court's opinion in *Morgan v. State*.[1] Briefly stated, the record shows that on October 3, 2000, Harris and Morgan showed up at Michael Warner's apartment,

demanded drugs, and searched the apartment. When the two were unable to find drugs, they took Warner's driver's license, credit card, and $300 in cash. Harris and Morgan then drove Warner, at gunpoint, to find an individual named "Lolly." During the drive, Harris threatened to kill Warner and fired a shot between his fingers. Eventually, Harris and Morgan checked into a motel. Warner attempted to escape from the motel at which point Morgan shot him in the leg.

During trial, Warner testified that he knew Morgan, but that he had never seen the second assailant before October 3. However, Warner was able to provide a detailed description of the man to police officers, including the fact that his assailant had a tattoo on his forearm and gold teeth. Warner subsequently identified Harris from pictures provided by the sheriff's department. Although Harris's picture did not show his tattoos or gold teeth, James Gordon, a sheriff's department investigator, testified that Harris did, in fact, have gold teeth and tattoos, matching those described by Warner. Warner also identified Harris in court as one of his assailants.

1. In his first enumeration, Harris challenges the sufficiency of the evidence. Specifically, he contends that the only evidence linking him to the crime is Warner's testimony. According to Harris, the testimony of this single witness is not sufficient to support the verdict. We disagree. Warner unequivocally identified Harris as one of the assailants, and "the testimony of a single witness is generally sufficient to establish a fact."[2] It follows that the evidence was sufficient to sustain Harris's conviction.[3]

In a related enumeration of error, Harris contends that the State failed to prove venue in Richmond County beyond a reasonable doubt. "Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged."[4] The State, which must prove venue beyond a reasonable doubt, may establish it by whatever means of proof available and may use both direct and circumstantial evidence.[5]

In this case, there was ample evidence of venue. Warner testified that his apartment is in Richmond County. And, after Warner was released from the hospital, he and Investigator Gordon retraced the route from Warner's apartment to the motel where he was shot. During trial, Gordon was asked if he had been "able to determine whether any of the events . . . actually occurred outside of Richmond County." Gordon responded, "I don't think any of them occurred

[2] (Punctuation omitted.) *Hawkins v. State*, 249 Ga. App. 26, 27 (1) (546 SE2d 280) (2001).

[3] See *Morgan*, supra at 59 (1).

[4] *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000).

[5] See id. at 901-903.

outside of Richmond County; no, none." Evidently, Harris believes that Gordon's equivocation at the beginning of his response renders the remainder of his answer unworthy of belief. This, however, is not the law.

As discussed above, the State must prove venue beyond a *reasonable* doubt.[6] The phrase "reasonable doubt" does not mean "beyond all doubt or to a mathematical certainty."[7] Here, Gordon's testimony demonstrates that he investigated the route taken by Warner and concluded that, to the best of his knowledge, all events occurred inside Richmond County. Such testimony is sufficient to prove venue. It follows that Harris's claim that there was insufficient evidence of venue presents no basis for reversal.

2. Harris asserts that the trial court erred in failing to sever his trial from that of Morgan, his co-defendant. This issue was raised by Harris's co-defendant in *Morgan v. State*.[8] As we noted in that case,

> [i]n ruling on a motion for severance, the trial court must consider: (1) whether the number of defendants creates confusion as to the law and evidence to be applied to each; (2) whether a danger exists that evidence admissible against one defendant might be considered against the other notwithstanding instructions to the contrary; and (3) whether the defenses are antagonistic to each other or each other's rights.[9]

Here, as in *Morgan*, we find no abuse of discretion in the trial court's refusal to sever the trial. Although Harris contends that his and Morgan's defenses were antagonistic, "that antagonism does not, in and of itself, require severance."[10] Here, Harris testified that it was a case of mistaken identity — that he was not present at the crime scene. Morgan, on the other hand, testified that the shooting stemmed from a drug deal with Warner that had gone awry. Assuming that these defenses are antagonistic, it was still incumbent upon Harris to "demonstrate a clear showing of prejudice and a consequent denial of due process in the absence of severance."[11]

Harris contends that the prejudice "stems from defense counsel's inability to mount a meaningful and effective cross-examination of Morgan," who testified that a Mr. Harris was present during the alleged drug deal. According to Harris, any attempt to question Mor-

---

[6] See id.
[7] *Brown v. State*, 264 Ga. 48, 49 (3) (a) (441 SE2d 235) (1994).
[8] Supra at 59-61 (2).
[9] (Punctuation omitted.) Id. at 59-60.
[10] Id. at 61.
[11] (Punctuation omitted.) Id.

gan regarding his presence during the crime would have undermined his claim that he was not, in fact, present. However, the mere fact that Morgan's testimony inculpated Harris does not require severance.[12] Where, as here, both defendants testify and have the opportunity to fully cross-examine the other, we find no abuse of discretion in the trial court's refusal to sever the trial.[13]

3. Harris also argues that the trial court erred in permitting Gordon to testify as to the ultimate issue in the case — Harris's identity as one of Warner's assailants. Gordon testified that he was looking for a person fitting the description given by Warner, and that Harris "fit everything that Mr. Warner had described and had picked out. There was no doubt in my mind that [he] was the subject that Mr. Warner had picked out, and the subject that Mr. Warner had indicated was involved." Assuming that this testimony was improper, we note that Harris failed to contemporaneously object. Thus, he has waived any alleged error on appeal.[14]

4. Harris maintains that the trial court erred in allowing the State to ask him a "burden shifting question" during his cross-examination. After Harris testified that he was not with Morgan the night of October 3, the prosecutor asked, "[w]here were you?" Harris responded that he did not remember. According to Harris, the prosecutor's question improperly implied that Harris needed to establish an alibi. However, in taking the stand, Harris was subject to cross-examination just like any other witness, except as to his general bad character or prior convictions.[15] We find nothing improper in the prosecutor's questioning of Harris, particularly in light of Harris's earlier testimony that he was not with Morgan on the night the crimes took place.[16]

5. In his final enumeration of error, Harris contends that the trial court erred in giving an overbroad jury instruction on aggravated assault. Harris was charged in the indictment with committing an assault "by discharging a firearm between [Warner's] fingers." In charging the jury, the trial court tracked the language of OCGA § 16-5-21 (a), informing jurors that "a person commits the offense of aggravated assault when that person assaults another person: with the intent to rob; or, with a deadly weapon; or with any object, device, or instrument, which, when used offensively against a person, is likely to, or actually does, result in serious bodily injury."

---

[12] Indeed, Harris fails to acknowledge the possibility that, even if he had been tried separately, Morgan still could be called to testify.

[13] See *Walden v. State*, 170 Ga. App. 880 (1) (318 SE2d 676) (1984).

[14] See *Herrington v. State*, 243 Ga. App. 265, 266 (2) (533 SE2d 133) (2000).

[15] See OCGA § 24-9-20 (b).

[16] See *Singleton v. State*, 240 Ga. App. 240, 241 (6) (522 SE2d 734) (1999).

"[I]t is not usually cause for [a] new trial that an entire Code section be given. This is so even though a part of the charge may be inapplicable under the facts in evidence."[17] In this case, at the outset of the trial, the court read the jurors the indictment, which specified the crime for which Harris was on trial. During its instruction to jurors, the trial court referenced the indictment, informing jurors that the indictment and the defendant's plea of not guilty framed the issues to be tried. The court then instructed jurors that the State bore the burden of proving "every material allegation in this *bill of indictment* against the defendants beyond a reasonable doubt,"[18] which the jurors then took with them into deliberations. Under these circumstances, the trial court's instruction provides no basis for reversal.[19]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED AUGUST 14, 2002.

*Peter D. Johnson*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[17] (Citations and punctuation omitted.) *Davis v. State*, 209 Ga. App. 187, 189 (2) (433 SE2d 366) (1993).
[18] (Emphasis supplied.)
[19] See id.; *Robinson v. State*, 268 Ga. 175, 176 (2) (486 SE2d 156) (1997).