## A02A0919. MOORE v. THE STATE.
(561 SE2d 454)

ELDRIDGE, Judge.

Following a bench trial in the Superior Court of Bibb County, Reginald Moore was found guilty of theft by receiving — motor vehicle. He appeals and, in his sole enumeration of error, claims the evidence was insufficient to support his conviction. A review of the evidence shows the contrary, and we affirm.

On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the verdict will be upheld.[1]

The evidence shows that, on October 22, 2000, the victim in this case was paying for gas at the RaceTrac gas station on Harrison Road, U. S. 80, in Macon. Apparently, she left her keys in the lock of the car's trunk after she retrieved her purse therefrom in order to pay for the gas. The victim testified that, when she exited the store, her car, a 1992 brown Lexus LS400, "wasn't there where I left it." A police report was filed, and the victim was reimbursed by the insurance company for the loss. Title to the car eventually went to State Farm Insurance.

Four months later, on February 8, 2001, Macon police officers were on patrol in and around Hall Street in Macon, a high crime area. They observed several men running from a brown Lexus; the men ran into 1287 Hall Street, a "dive" wherein marijuana was smoked, guns were traded, and illegal gambling occurred. The officers pulled over and approached the door of the house; it was ajar and a "very strong odor of marijuana" was detected coming from the house. Upon entering the house, several suspects were "trying to exit out the back door," including appellant Moore. The men had been gambling. Moore and the others were arrested, and the vehicle identification number ("VIN") of the Lexus was run through the National Crime Information Center ("NCIC"). The vehicle came back stolen

---

[1] *Upshaw v. State*, 249 Ga. App. 741, 745 (3) (549 SE2d 526) (2001).

from the RaceTrac victim. The arresting officer, S. Ellington, testified that he informed Moore and the other suspects the Lexus was stolen and that he intended to impound it. He testified that "[e]verybody knew the car was stolen."

The Lexus was towed to Ackerman's, an impound lot; a recovery report was issued; and the stolen vehicle information was taken off the NCIC's computer. At trial, it was explained that

> [i]f a car is recovered and taken out of the computer as stolen and it's taken to Ackerman's with the intent of safekeeping for the owner, the rightful owner to come and get the car, and if somebody without the owner's consent comes and retakes the car, if anything, the car has been stolen again.

Moore bonded out of jail immediately. The next day, February 9, 2001, Moore went to Ackerman's. He was in possession of a bill of sale for the Lexus, dated December 15, 2001, which showed that he had bought the Lexus from a "Brenda Davis" who resided at "2291 Northside Drive" in Macon. An employee of Ackerman's testified that the bill of sale was certified; however, from our review, no seal imprint is seen on the copy kept by Ackerman's and introduced at trial; in addition, the purported notary did not sign the document. Moore also had an insurance card on the Lexus issued on February 1, 2001, but the insurance had been taken out by Latonya Hill, Moore's "god-sister." Moore showed Ackerman's a Georgia ID card, but, because he did not have a driver's license, his girlfriend at the time, Kolita Ridgeway, provided Ackerman's with a Georgia driver's license. The Lexus was released to Moore.

In mid-February, "someone called and said that Reginald Moore was driving around in a stolen Lexus." Although the stolen vehicle information had been removed from the computer when the Lexus was recovered, further investigation of the VIN by Macon Police Officer G. Jeffcoats showed that title to the Lexus belonged to State Farm Insurance. Jeffcoats contacted State Farm, and "they stated, yes, that they owned the car, that they had paid $16,800 for the car and they had never picked it up." Further investigation at Ackerman's showed that the Lexus was released to Moore. Jeffcoats obtained Ackerman's copy of the bill of sale that Moore used to secure the release of the Lexus. With regard to the information contained therein, Jeffcoats could not locate a "Brenda Davis." Investigation further showed that the address on Northside Drive was false.

At that point, Jeffcoats interviewed Moore about the Lexus. Moore told Jeffcoats that "he bought it from a guy in Atlanta." He "stated that he did not know a Brenda Davis." Moore told the officer that "he didn't have a bill of sale for the car." When shown the bill of

sale he had used to secure the release of the Lexus, Moore told Officer Jeffcoats "that was in the car when he bought the car." Moore was charged with theft by receiving stolen property.

At trial, Moore took the stand and testified in his own behalf. He claimed that he had rented the Lexus several times from an unknown man who hung around the "dive" on Hall Street; "[y]ou know, he was sneaking around and renting the car out from down there trying to get drugs." Thereafter, he bought the Lexus from Brenda Davis, the alleged owner, for $7,800, although the car was valued at $9,000 even for salvage. Moore testified that he got "a great deal."

Moore did not know Brenda Davis, did not know how to locate her, and had no idea whether she really owned the car. It was unexplained why Davis permitted a purported junkie to rent the Lexus to other people in order to obtain drug money. Moore testified that the sale took place on the street; Moore purchased the Lexus in front of the "dive" on Hall Street. Davis showed him the bill of sale, Moore signed it, he handed over the money, and she handed over the keys.

Moore further testified that, when he was arrested, he was carrying a fake insurance card that came from "someone I knew that printed those fake insurance cards," although his god-sister had purchased insurance on the vehicle at the time Ackerman's released it to Moore. Finally, Moore testified that Officer Ellington lied when he stated that Moore had been told when he was arrested at the gambling house that the Lexus was stolen. He also testified that Officer Jeffcoats lied when he stated that Moore had told him he did not know Brenda Davis; that he did not have a bill of sale for the car; and that he bought the car from a man in Atlanta.

Following the presentation of this evidence, the trial court made specific findings to support its verdict, which bear repeating in this sufficiency review:

> These are the facts that certainly have influenced my decision. You bought the car essentially on the street corner from total strangers. I think that's the testimony that you have given. The bill of sale, of course, is invalid. You've had two insurance cards, one of which you admitted was fraudulent. . . . Brenda Davis, whose name appears and whose address appears on a bill of sale, again somebody you did not know other than having seen on the street, the address was non-existent. You were buying a car at a time when you had no valid driver's license to begin with. I mean you could not have gone to Butler Lexus to buy this automobile, that you didn't have a driver's license, and the car or market value of the vehicle, according to the expert testimony, was $15,912

and you indicated that you had paid something on the order of $7,800. Detective Jeffcoats and Officer Ellington gave testimony which you have indicated you believe to be untruthful. Again, I've got to be the judge of the credibility of the witnesses. I've got to decide who to believe and not to believe. Detective Jeffcoats has given testimony that you gave prior statements inconsistent with subsequent statements and inconsequent with your testimony today. I find that they are credible witnesses, that they did not have a reason and a motive to testify falsely. Consequently, I find that the State has proven beyond a reasonable doubt that under all the circumstances you either knew or you should have known that the Lexus was stolen.

A person commits theft by receiving stolen property when he "receives, disposes of, or retains stolen property which *he knows or should know* was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner."[2] In agreement with the trial court's factual presentation and in deference to its credibility assessment, we find the above evidence sufficient for a rational trier of fact to have found Moore guilty beyond a reasonable doubt of the offense as charged.[3]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED MARCH 6, 2002.

*Robert M. Bearden, Jr.*, for appellant.
*Howard Z. Simms, District Attorney, Myra H. Kline, Assistant District Attorney*, for appellee.

---

[2] (Emphasis supplied.) OCGA § 16-8-7 (a).
[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).