A06A1652. COLLINS v. THE STATE.
(641 SE2d 208)

BERNES, Judge.

A Newton County jury convicted Kevin Jay Collins of aggravated battery and reckless conduct after he broke his girlfriend's neck during an argument. On appeal from the denial of his amended motion for new trial, Collins contends that there was insufficient evidence to convict him and that he received ineffective assistance of counsel. For the reasons discussed below, we reject Collins' sufficiency of the evidence and ineffective assistance claims. However, because the trial court should have merged Collins' conviction for reckless conduct into his conviction for aggravated battery, we vacate Collins' conviction and sentence for reckless conduct.

1. Collins contends that there was insufficient evidence to support his convictions. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations omitted.) *Milton v. State*, 272 Ga. App. 908, 909 (614 SE2d 140) (2005).

Viewed in this light, the evidence presented at trial reflects that Collins and the victim were dating at the time of the incident. On August 8, 2004, Collins, the victim, and several others made plans to celebrate the birthday of the victim's oldest sister. That evening, the group departed in a rented limousine for a comedy club in Atlanta for the birthday celebration. On the way to the club, the victim "took

some sips of [her] cousin's wine" but attempted to conceal it from Collins, who had "some concerns" about being around drinking based on his prior problems with alcohol. Collins soon realized that the victim was drinking wine, became angry, and began to argue with the victim.

Collins and the victim continued to argue about her alcohol use after they arrived at the comedy club. Nevertheless, Collins bought the victim wine and began consuming alcohol himself. Even so, Collins remained mad at the victim "the entire night" over the fact that she was drinking alcohol, to the point that "it became obvious to the rest of [the] group that he was angry." As the argument continued, Collins "grabb[ed] and squeez[ed]" the victim, causing bruises on her arm and leg. By the end of the birthday celebration, the argument had become so "heated" that the victim began to cry.

Once the birthday celebration concluded, the group rode in the limousine back to the home of the victim's sister. After reaching the sister's residence, Collins agreed to drive the victim back to her apartment in Newton County. During the drive, Collins began yelling at the victim about her alcohol use. As they neared the apartment, the argument escalated to the point that Collins intentionally threw tobacco juice from his dipping cup into the victim's face. The juice went into the victim's eye, causing her eye to burn and for her to temporarily lose sight. As Collins stopped the car outside the victim's apartment, he punched the rearview mirror, breaking it. The victim then grabbed Collins' face "to say stop." In response, Collins grabbed the victim by the face, twisted her head "all the way around" to the left, and "slammed" her turned head toward the floorboard.

In severe pain and unable to move her neck, the victim began to scream "you broke my neck, you broke my neck." The victim repeatedly pled for Collins to take her to the hospital or call her mother, but Collins refused and took away her cell phone. After Collins carried the victim into her apartment, the victim sat on the couch, crying hysterically and rocking back and forth. She asked Collins to retrieve some pain medication that had recently been prescribed to her for tooth trouble. Collins retrieved the medication, and the victim took one of the pills. Collins then carried the victim to her bedroom, laid her on the bed, took off her clothes, and had sex with her.

At approximately 9:00 a.m., after sleeping for three hours, the victim awoke "shaking [so] badly that [her] teeth were chattering." The victim was unable to move her right arm. As Collins continued sleeping, the victim made it to her cell phone and called her mother, who drove over to the victim's apartment and took her to the hospital. Collins left the apartment separately in his own truck.

Testing at the hospital revealed that the victim's neck was broken, necessitating surgery. The victim remained at the hospital

for six days and thereafter had to wear a neck brace for two months. Collins never visited the victim at the hospital.

After her release from the hospital, the victim was interviewed by an investigator with the Newton County Sheriff's Office. The victim related to the investigator how she had been injured, and the investigator took out warrants for Collins' arrest. However, the investigator was unable to locate Collins, who had turned off his cell phone and had left his residence and checked into a hotel. Collins also had left his truck at his residence and instead was using a taxi for transportation. A week later, law enforcement officers spotted Collins walking toward the interstate and arrested him. Collins was subsequently tried and convicted of aggravated battery and reckless conduct.

(a) *Aggravated Battery*. "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body. . . ." OCGA § 16-5-24 (a). The indictment alleged that Collins committed aggravated battery in that he maliciously caused bodily harm "by depriving [the victim] of a member of her body, to-wit: her neck, by grabbing her head with his hands and twisting her neck." On appeal, Collins does not contest that he grabbed the victim and caused her to break her neck, or that she was deprived of use of her neck as a result of her injury. Rather, he contends that the evidence presented at trial failed to prove that he acted with the requisite criminal intent to be convicted of aggravated battery as charged in the indictment. We disagree.

"The intention with which an act is done is peculiarly for the finder of fact," who "may infer that a person acted with criminal intent after considering the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." (Citation and punctuation omitted.) *In the Interest of C. L. B.*, 267 Ga. App. 456, 458 (600 SE2d 407) (2004). Such an inference clearly was permissible in this case. In particular, Collins' malicious intent could be inferred from the act itself of twisting the victim's head "all the way around" to the left and "slamm[ing]" it toward the car floorboard.[1] See *Strozier v. State*, 254 Ga. App. 528, 529 (1) (562 SE2d 832) (2002) (jury may infer "that persons of sound mind

---

[1] Collins characterizes the victim's testimony at trial as if she had no memory of what happened immediately preceding her injury. We have reviewed the trial transcript and reject Collins' characterization of the victim's testimony. Although the victim at times qualified her testimony with statements like "[a]s far as I can remember" and "[a]s far as I am concerned," she nevertheless sufficiently laid out her factual understanding of what had occurred. Additionally, we note that Collins does not challenge the introduction of the victim's prior consistent statement to the investigating officer.

and discretion intend the natural and probable consequences of their acts") (citation omitted). His intent also could be inferred from the fact that the incident occurred during a heated argument that had extended over several hours and had previously resulted in physical violence toward the victim, as shown by the bruising on her arm and leg; by his refusal to take the victim to a hospital or call her mother after the incident; and by his subsequent flight from law enforcement. See *Green v. State*, 277 Ga. App. 867, 869 (1) (627 SE2d 914) (2006) (efforts to avoid police detection can serve as evidence of defendant's consciousness of guilt); *Johnson v. State*, 277 Ga. App. 499, 503 (1) (a) (627 SE2d 116) (2006) (defendant's flight can serve as circumstantial evidence of guilt). Finally, Collins' intent could be inferred from evidence of two prior similar transactions in which Collins had assaulted a previous girlfriend. See *Johnson v. State*, 276 Ga. App. 505, 510 (4) (623 SE2d 706) (2005) (similar transaction evidence can be admitted to prove the defendant's bent of mind and intent).

It is true that Collins testified, in contrast to the victim, that the incident occurred while they were still en route to the victim's apartment complex, and that he was only attempting to push the victim away from him in order to avoid a car accident. The jury, however, was entitled to disbelieve Collins' self-serving version of events. See *Lee v. State*, 275 Ga. App. 93, 95 (619 SE2d 767) (2005); *Nelloms v. State*, 273 Ga. App. 448, 450 (1) (615 SE2d 153) (2005). Moreover, even if the jury believed Collins' testimony that he was reacting to the victim's aggression, the jury nevertheless was entitled to conclude that his reaction was excessive and therefore was not justified. See, e.g., *Clark v. State*, 271 Ga. 27, 29 (2) (518 SE2d 117) (1999) ("The use of excessive force or unlawful force while acting in self defense is not justifiable. . . ."). And, although Collins attempts to call into question the credibility of the victim's testimony by emphasizing that she had been drinking before the incident and had made a prior inconsistent statement in a letter addressed to the trial court, it is the province of the jury, not this Court, to assess witness credibility and weigh conflicting evidence. *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

Finally, Collins asserts that his acquittal on a separate count of aggravated assault "generates real concern as to whether [the jury] reached a decision supported by the evidence." His assertion is without merit. "Georgia does not recognize the inconsistent verdict rule, and thus [Collins] may not use his acquittal on one count to challenge the factual findings of guilt on a separate count." *Roberts v. State*, 277 Ga. App. 730, 732 (627 SE2d 446) (2006).

For these reasons, we conclude the evidence was sufficient for a rational trier of fact to find Collins guilty beyond a reasonable doubt of aggravated battery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781,

61 LE2d 560) (1979). See *Campbell v. State*, 258 Ga. App. 863, 864-865 (575 SE2d 748) (2002) (criminal intent to commit aggravated battery inferred from fact that defendant was visibly angry with victim and the incident occurred after a heated verbal confrontation); *Shaw v. State*, 247 Ga. App. 867, 871 (3) (a) (545 SE2d 399) (2001) (criminal intent to commit battery inferred from, among other things, victim's statements to officer of what had occurred and from visible injuries to victim's neck). "[Collins] in effect seeks a reweighing of the evidence. This we cannot do." (Citation, punctuation and footnote omitted.) *Easley v. State*, 266 Ga. App. 902, 905 (3) (598 SE2d 554) (2004).

(b) *Reckless Conduct.* The same evidence discussed above would entitle a rational factfinder to conclude that Collins was guilty beyond a reasonable doubt of reckless conduct. See OCGA § 16-5-60; *Jackson*, 443 U. S. 307. But, Collins' conviction for reckless conduct clearly merged as a matter of fact into his conviction for aggravated battery, as the state conceded at the beginning of sentencing. See *Childers v. State*, 228 Ga. App. 214, 215, n. 1 (491 SE2d 456) (1997). Notwithstanding this concession, the record shows that the trial court entered judgment and sentence on both convictions. Consequently, we vacate Collins' conviction and sentence for reckless conduct and remand this case with instruction that the trial court amend the judgment to reflect the merger. See *Smith v. State*, 279 Ga. App. 211, 212-213 (1) (630 SE2d 833) (2006); *Doublette v. State*, 278 Ga. App. 746, 750 (2) (629 SE2d 602) (2006).

2. In several enumerations of error, Collins contends that his trial counsel rendered ineffective assistance.

In order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show both that counsel's performance was deficient and that the deficiency was prejudicial to his defense. The first part of the test requires that the defendant overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. In order to satisfy the second part of the test, the defendant must show that there is a reasonable probability that, absent counsel's deficiency, the result of the trial would have been different.

(Citations and punctuation omitted.) *Cross v. State*, 271 Ga. 427, 430 (3) (520 SE2d 457) (1999). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Collins has failed to make the required showing.

(a) Collins first contends that his trial counsel provided ineffective assistance by failing to object to testimony by the investigating officer that Collins characterizes as a comment on his pre-arrest silence. See *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991) (prohibiting comments upon defendant's silence, "even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense"). At trial, the investigating officer testified that after he obtained warrants for Collins' arrest, he made repeated unsuccessful attempts to apprehend Collins. These attempts included locating and visiting Collins' residence and enlisting the assistance of a fugitive search squad. According to the investigator, Collins was not apprehended until a week after the warrants were issued, when he was spotted walking toward an interstate in Newton County.

Contrary to Collins' assertion, the investigator's testimony was not a comment on Collins' pre-arrest silence. Rather, the testimony concerned Collins' flight from law enforcement and thus was admissible to show consciousness of guilt. *Moore v. State*, 278 Ga. 397, 399 (2) (a) (603 SE2d 228) (2004). See also *Smith v. State*, 277 Ga. 508 (2) (591 SE2d 805) (2004). An objection by trial counsel would not have been proper, and so Collins cannot establish the deficiency prong of his ineffective assistance claim. See *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.") (citations and punctuation omitted).

(b) Collins next argues that his trial counsel was ineffective by failing to object when the prosecutor cross-examined him about the probation sentences he received for his two prior convictions of domestic violence. We agree with Collins that it was improper for the prosecutor to cross-examine him about the punishment he received on his prior convictions admitted as similar transaction evidence. See *Miller v. State*, 250 Ga. App. 84, 85-86 (2) (550 SE2d 134) (2001); *Weaver v. State*, 206 Ga. App. 560, 561 (3) (426 SE2d 41) (1992); *Groble v. State*, 192 Ga. App. 260, 260-261 (2) (384 SE2d 281) (1989). Furthermore, at the new trial hearing, Collins' trial counsel testified that she did not object to the cross-examination because she did not think that the law disallowed it. As such, her decision to forego raising an objection was not strategic. See, e.g., *Orr v. State*, 262 Ga. App. 125, 129 (3) (584 SE2d 720) (2003) (rejecting argument that decision not to object was result of reasonable trial strategy, where trial counsel's decision was predicated on erroneous view that testimony was not improper opinion testimony).

We conclude, however, that Collins cannot show that the outcome of the trial would have been different if his trial counsel had objected to the cross-examination. The improperly elicited testimony was one

brief instance that occurred over a two-day jury trial, and the prosecutor did not attempt to capitalize on this specific testimony at any other point during the proceedings. Furthermore, the state's case was strong, given the testimony of the victim and the investigating officer, the similar transaction evidence, the severity of the victim's neck injury, and the photographs of the victim's bruises. Accordingly, we conclude that Collins cannot prove the prejudice prong of his ineffective assistance claim. See *Miller*, 250 Ga. App. at 85-86 (2); *Weaver*, 206 Ga. App. at 561 (3). Compare *Collier v. State*, 266 Ga. App. 345, 355 (2) (b) (596 SE2d 795) (2004) (prosecutor's "pronounced and persistent improper remarks" about fact that defendant had served no prison time for his prior similar transactions was not harmless, since the remarks were made repeatedly as part of an ongoing "impermissible theme: send [the defendant] to prison because he had not been effectively punished for committing the similar transactions and because the community would not otherwise be safe in the future").

(c) Lastly, Collins claims that his trial counsel provided ineffective assistance by failing to object to what he characterizes as an improper statement to the jury by the prosecutor during closing argument. Specifically, the prosecutor argued to the jury: "Let's set the standard in our community that this is not tolerated. This is not how a woman is going to be treated in our community." The prosecutor's argument was not improper under Georgia law. We have held that "closing argument references to what message a 'not guilty' verdict would send to the community regarding safety or principles of right and wrong are permissible forms of argument" and that "[a] prosecutor may appeal to the jury to convict for the safety of the community or to send a message to others that criminal activities will be punished." (Punctuation and footnotes omitted.) *Green v. State*, 244 Ga. App. 697, 698 (2) (536 SE2d 565) (2000). See also *McKibbons v. State*, 216 Ga. App. 389, 392-393 (4) (455 SE2d 293) (1995); *Johnson v. State*, 187 Ga. App. 803, 804 (4) (371 SE2d 419) (1988). The prosecutor's "community standard" argument was substantially similar to this line of Georgia cases.

Collins relies upon *Braithwaite v. State*, 275 Ga. 884, 885-886 (2) (b) (572 SE2d 612) (2002) and *Rivers v. State*, 265 Ga. 694, 697 (6) (461 SE2d 205) (1995), but those cases addressed a "golden rule" violation and future dangerousness argument, respectively. Similarly, *Collier*, 266 Ga. App. at 351-352 (2), also cited by Collins, involved a closing argument that injected the issue of punishment and future dangerousness into the guilt/innocence phase of the trial. Here, the prosecutor did not ask the jury to step into the shoes of the victim or family; did not ask the jury to consider the future dangerousness of Collins or

the specific consequences of letting him back onto the street; and did not raise the issue of punishment.

For the foregoing reasons, we reject Collins' argument that the prosecutor's closing argument to the jury was improper, particularly since "[a] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting for lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Citation and punctuation omitted.) *Hambrick v. State*, 278 Ga. App. 768, 772 (3) (629 SE2d 442) (2006). And, because the statement was not improper, it can provide no basis for an ineffective assistance claim. See *Henry*, 279 Ga. at 617 (3).

In summary, the trial court properly concluded that there was sufficient evidence to convict Collins and that he could not succeed on his ineffective assistance of counsel claims. But, the trial court erred by failing to merge Collins' conviction for reckless conduct into his conviction for aggravated battery. For this reason, we vacate Collins' conviction and sentence for reckless conduct and remand with instruction that the judgment be amended to reflect the merger. We affirm in all other respects.

*Judgment affirmed in part and vacated in part, and case remanded with instruction. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED JANUARY 5, 2007.

*Garland, Samuel & Loeb, William C. Lea*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, Layla V. Hinton, Assistant District Attorney*, for appellee.